UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JEREMIAH BULT ET AL** | **CASE NO. 2:22-CV-01381** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **USAA GENERAL INDEMNITY CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 45] filed by defendant USAA General Indemnity Company, seeking a ruling on certain coverage issues. Plaintiffs oppose the motion. Doc. 48.

I.
BACKGROUND

This suit arises from damage to plaintiffs' home in Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. At all relevant times the property was insured under a policy issued by USAA GIC, providing coverage at the following limits:

| | Type | Limit |
|---|---|---|
| **Coverage A** | Dwelling | $209,000.00 |
| **Coverage B** | Other Structures | $20,900.00 |
| **Coverage C** | Personal Property | $104,500.00 |
| **Coverage D** | Loss of Use | Unlimited up to 24 months |

Doc. 45, att. 3, pp. 4, 60.

Plaintiffs made a claim after Hurricane Laura. USAA GIC investigated the claim through third-party adjuster Allcat Claims Service, LP. Deanna Vest, an employee of Allcat, inspected plaintiffs' property on August 31, 2020, and prepared a report for USAA GIC estimating repair costs. Doc. 45, att. 4. USAA GIC issued payment based on this estimate on September 17, 2020, for the full ACV amount less depreciation and applicable deductible. Doc. 25, att. 2, p. 2. It also issued supplemental payments for HVAC repairs and moisture remediation, and for additional living expenses. Plaintiffs maintain, however, that these payments were inadequate and untimely. They filed suit in this court on May 24, 2022, raising claims of breach of insurance contract and bad faith. Doc. 1.

The matter is now set for jury trial before the undersigned on September 5, 2023. USAA GIC has brought a motion for partial summary judgment on the following issues:

(1) Plaintiffs are not entitled to additional contractual damages for certain repairs that have been completed and funded by USAA GIC, including but not limited to repairs to the roof, fence, HVAC, and moisture remediation;

(2) Plaintiffs are not entitled to any further payments for additional living expenses;

(3) Plaintiffs should be precluded from recovering more than the $72,292.52 identified in discovery for repair costs completed to date and are not entitled to prove their damages based on estimates of repairs for repairs that have already been completed;

(4) Plaintiffs are not entitled to recover contractual damages exceeding the policy limits; and

(5) Plaintiffs are not entitled to statutory penalties for amounts initially tendered, including repairs to the roof and fence, and amounts tendered for the HVAC replacement.[1]

Doc. 45, p. 6. Plaintiffs oppose the motion. Doc. 48.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara*

---

[1] USAA GIC laid out the topics as follows in its memorandum:
1) the Plaintiffs, Jeremiah and Nichole Bult (the "Bults") are not entitled to additional contractual damages for certain repairs that have been completed and funded by USAA GIC, including but not limited to repairs to their roof, fence, and A/C system as well as moisture remediation; 2) the Bults should be precluded from recovering more than the $72,292.52 identified in discovery for repair costs completed to date; 3) the Bults are not entitled to any additional loss of use payments for alternative living expenses under the policy of insurance as USAA GIC has funded all such payments up to August 2022, which was twenty-four (24) months following Hurricane Laura; 4) the Bults are not entitled to prove their damages based on estimates of repairs for those repairs that have already been completed; 5) the Bults are not entitled to recover contractual damages, which exceed their policy limits; and 6) the Bults are not entitled to statutory penalties for amounts initially tendered, including repairs to the roof and the fence, and amounts tendered for the A/C system replacement.
Doc. 45, att. 1, p. 6. These have been reorganized for the sake of efficiency.

*v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

**A. Governing Law**

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy

is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

### B. Application

#### 1. Contract damages for completed repairs

USAA GIC first seeks summary judgment to the effect that it is not liable for any further damages on the contract claims for completed repairs it has funded, including but not limited to repairs to the roof, fence, HVAC, and moisture remediation. Plaintiffs maintain that USAA GIC failed to adequately pay for these categories of damage and is therefore not entitled to summary judgment.

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Under Louisiana law, a plaintiff must support the best evidence in support of his claim. *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d

1151, 1169 (5th Cir. 1983). "Damages may be predicated on estimation only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." *Id.* (quoting *Lambert v. Allstate Ins. Co.*, 195 So.2d 698, 700 (La. Ct. App. 1st Cir. 1967)).

As noted above, USAA GIC investigated the claim through third-party adjuster Allcat Claims Service, LP. Deanna Vest, an employee of Allcat, inspected plaintiffs' property on August 31, 2020, and prepared a report for USAA GIC estimating repair costs. Doc. 45, att. 4. This estimate provided for replacement of plaintiffs' roof, at a replacement cash value ("RCV") of $12,246.88 and actual cash value ("ACV") of $10,447.06. *Id.* at 10. It also provided for replacement of plaintiffs' fence at an RCV of $10,150.38 and an ACV of $6,055.35.[2] *Id.* at 22–23.

Mr. Bult testified that he repaired the fence himself and spent approximately $5,000.00 on the work. Doc. 45, att. 6, pp. 11–12, 123–24. Plaintiffs still seek additional sums on the fence repair, however, relying on the $18,000.00 figure in their estimate. They cite the testimony of their expert, public adjuster Cal Chambers, who testified that the difference between the amount paid on the fence and the amount listed in his estimate reflects the reuse of old materials and credit for Mr. Bult's labor. Doc. 48, att. 4, p. 37. They also cite Mr. Bult's testimony that fencing materials were missing from his expense

---

[2] Ms. Vest submitted revised estimates in October 2020 but these had no impact on the amounts provided for the roof or fencing. *See* doc. 12, att. 5, pp. 458–525.

spreadsheet. Doc. 48, att. 3, p. 18. He does not quantify this amount, however, nor do plaintiffs point to any additional invoices. They also point to no authority allowing plaintiff to recover for his own labor. Accordingly, plaintiffs are not entitled to any additional contractual damages for this portion of their claim.

As for the roof, Mr. Bult signed a contract with Seychel Roofing on September 19, 2020. Doc. 45, att. 5. The amount listed in the contract was $12,246.88, the same as the RCV in the Allcat estimate. *Id.* USAA GIC then remitted payment for the recoverable depreciation. Doc. 25, att. 2, p. 3. Plaintiffs assert, however, that the actual cost to replace the roof was $15,363.40. To this end they rely on a supplement request submitted by Seychel on September 21, 2020, supported by documentation of additional costs. Doc. 12, att. 5, pp. 454–57. There is no indication that plaintiffs have actually paid the supplement. Unpaid invoices, however, may constitute competent evidence of the value of goods or services provided. *Ogden Food Serv. Corp. v. Mitchell*, 614 F.2d 1001, 1004 (5th Cir. 1980). It is up to USAA GIC to present contradictory evidence as to why it did not pay the supplement and does not believe any additional sums are owed on the roof. Accordingly, it is not entitled to summary judgment on this portion of the claim.

As for the HVAC, plaintiffs sent USAA GIC an estimate from ACE Air Conditioning for replacement of the home's HVAC at a cost of $10,837.00. Doc. 45, att. 7. USAA GIC requested additional documentation, and then eventually issued payment after receiving an explanation from ACE Air Conditioning and referring to the photographs

from the field inspection. Doc. 12, att. 11, pp. 399, 407–11. USAA GIC then issued payment for $9,033.64, representing the $10,837.00 in the estimate less depreciation. Doc. 25, att. 2, ¶ 18. USAA GIC has failed to submit any documentation of the appropriate amount of the deduction, however, and the court cannot find it reflected in the Allcat estimates. Accordingly, it is not entitled to summary judgment on this portion of the claim.

As for the moisture remediation, plaintiffs notified USAA GIC of moisture issues in September 2020. Doc. 12, att. 11, pp. 380, 384. On October 22, 2020, Mr. Bult advised USAA GIC that he believed the home needed to be gutted. *Id.* at 404. Plaintiffs submitted a contractor estimate for drywall and insulation repairs on March 22, 2021. *Id.* at 413. USAA GIC labeled the estimate as "mold remediation" and requested mold documentation from plaintiffs. *Id.* at 415. One month later plaintiffs submitted another estimate for mitigation, but advised USAA GIC to ignore it since they would be pursuing mold testing with Booth Environmental. *Id.* at 416. Plaintiffs submitted the report from Booth Environmental in July 2021, and one month later submitted an estimate for moisture remediation from Restoration 1 of South Louisiana in the amount of $17,108.26. Doc. 25, att. 2, p. 4; doc. 45, att. 8. USAA GIC paid the full amount of the estimate within two weeks. Doc. 25, att. 2, ¶ 23. Mr. Bult testified that Restoration 1 completed the work to his satisfaction, though he was never reimbursed for the mold testing. Doc. 45, att. 6, pp. 87–88. He also testified that he had done some of the drywall removal himself, though he did not specify whether he had incurred any costs. Doc. 48, att. 3, p. 10. USAA GIC's corporate

representative later testified that the Bults should not have been required to submit a mold report and that the desk adjuster may have erred in requesting one. Doc. 48, att. 5, p. 87. Based on the foregoing, USAA GIC has shown that no additional sums are owed on the remediation under the contract. It may, however, be required to reimburse the mold testing fee and be liable for bad faith damages based on the failure to timely remit payment.

2. **Additional living expenses**

USAA GIC also argues that plaintiffs may not recover any more sums under Coverage D, Additional Living Expenses. As shown above, the policy provides up to 24 months of unlimited living expenses under this category. USAA GIC maintains that it tendered $2,848.29 to plaintiffs based on receipts they submitted for additional living expenses through August 2022. Plaintiffs show, however, that USAA GIC provided over $30,000.00 under Coverage D spread across several payments between October 2020 and April 2022. Doc. 48, att. 6. The last payment, according to plaintiffs' records, was a $10,000.00 check issued in April 2022, which was intended to cover December 2021 through April 2022. *Id.* Plaintiffs state that they did not move back into their home until November 2022. Doc. 48, p. 6. Accordingly, they maintain that they are owed additional payments to cover April through August 2022. Mr. Bult, however, testified that he was "okay" with the rental coverage afforded by USAA GIC. Plaintiffs have failed to support their claim of additional sums owed with any invoices or testimony. Accordingly, USAA GIC has met its burden of showing that no additional sums are owed under this claim.

### 3. Completed repair costs

USAA GIC's next arguments relate to the extent to which plaintiffs' damages are limited to the invoices they have submitted. Under Louisiana law, a plaintiff must support the best evidence in support of his claim. *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983). "Damages may be predicated on estimation only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." *Id.* (quoting *Lambert v. Allstate Ins. Co.*, 195 So.2d 698, 700 (La. Ct. App. 1st Cir. 1967)).

Plaintiffs have disclosed invoices and receipts in the amount of $74,292.50 for their repairs. *See* doc. 45, att. 14, pp. 6–7. They requested that USAA GIC disregard one invoice, in the amount of $2,000.00. *Id.*; doc. 12, att. 11, p. 416. Accordingly, USAA GIC seeks summary judgment to the effect that plaintiffs may not recover repair costs in excess of the amount ($72,292.50) for which they have submitted this proof and may not rely on estimates to prove the amount of damages for any repairs that have been completed. Plaintiffs both testified, however, that certain repairs have yet to be addressed, including the garage, attic, and kitchen. Doc. 48, att. 3, p. 19; doc. 48, att. 7, p. 28. Plaintiffs have thus created an issue of fact as to the completion status of repairs. They are limited to the

costs reflected in their invoices for completed repairs but may rely on estimates for other work. Summary judgment will thus be granted in part and denied in part on this claim.

### 4. Contractual damages exceeding policy limits

USAA GIC also maintains that plaintiffs may not recover contractual damages in excess of their policy limits. Plaintiffs point to the Additional Coverages section of the policy, which provides that USAA GIC will pay increased costs up to 5 percent of the Coverage A limit actually incurred and required for compliance "with any ordinance or law governing the building, repair, or demolition of the damaged property." Doc. 45, att. 3, p. 20. Plaintiffs also point to the "Home Protector Coverage," which applies when the value of the home increases due to certain additions or physical changes and states that USAA GIC will increase the replacement cost of the home up to the greater of 5 percent or $25,000.00 as long as certain conditions are met. *Id.* at 27–28. Under Louisiana law, the insurer has the burden of showing policy limits or exclusions. but the insured must prove the existence of the policy and coverage. *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002). USAA GIC has met its burden of establishing the policy limits and plaintiffs have come forward with no evidence to show that coverage exists under any excess provision. Accordingly, USAA GIC is entitled to summary judgment on this claim.

### 5. Statutory penalties for amounts initially tendered

Finally, USAA GIC asserts that it is entitled to summary judgment on plaintiffs' claims for statutory penalties on the amounts it initially tendered and for the amount provided for replacement of the HVAC system. Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

The amounts tendered by USAA GIC are specific line items under plaintiffs' dwelling claim. Plaintiffs have supplied competent summary judgment that USAA GIC has refused to tender other amounts owed under that coverage, and that USAA GIC might have impermissibly delayed in investigating and paying for moisture remediation. If the court were to piecemeal decisions on bad faith under areas of coverage, the pretrial motion practice on these hurricane cases would be insurmountable. Summary judgment is therefore denied. The parties are cautioned, however, that agreeing to the timeliness of certain payments may help streamline issues for trial.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 45] will be **GRANTED IN PART** and **DENIED IN PART**, as described above.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of August, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**